JOSHUA D. KIENITZ, Bar No. 244903
jkienitz@littler.com
LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, California 94597
Telephone: 925.932.2468
Fax No.: 925.946.9809

DOUGLAS L. ROPEL, Bar No. 300486
dropel@littler.com
LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, California 95814
Telephone: 916.830.7200
Fax No.: 916.561.0828

HARMAN S. DEOL, Bar No. 346547
hdeol@littler.com
LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
Telephone: 415.433.1940
Fax No.: 415.399.8490

Attorneys for Defendant
PACIFIC GAS & ELECTRIC COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE GARCIA, on behalf of himself and all others similarly situated, and the general public,

Plaintiff,

v.

PACIFIC GAS & ELECTRIC COMPANY, a California Corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No.

**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

**[28 U.S.C. §§ 1331, 1441, and 1446]**

Trial Date: TBD
Complaint Filed: June 4, 2024
San Francisco Superior Court
Case No. CGC24615226

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF JOSE GARCIA:**

**PLEASE TAKE NOTICE** that Defendant PACIFIC GAS AND ELECTRIC COMPANY, AND DOES 1-50 ("Defendant" or "PG&E"), contemporaneously with the filing of this Notice, are effecting the removal of the above-referenced action from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California.

Removal is proper based on 29 U.S.C. § 185(a). This action is removed pursuant to the procedures found in 28 U.S.C. §§ 1441 and 1446, and removal jurisdiction is based on a federal question under 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1446(d), Defendant will also file a copy of this Notice of Removal with the San Francisco Superior Court.

## I. PROCEDURAL BACKGROUND

On June 10, 2024, Plaintiff Jose Garcia ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of San Francisco, which is captioned as follows: *Jose Garcia, individually, and on behalf of others similarly situated, v. Pacific Gas and Electric Company, A California Corporation, and Does 1 through 20, inclusive,* Case No. CGC-23-604634. ("Complaint" or "Compl.") The Complaint contains seven (7) causes of action, alleging: (1.) Failure to Provide Meal Periods (Cal. Lab. Code §§ 204, 223, 226.7, 512 and 1198); (2.) Failure to Provide Rest Periods (Cal. Lab. Code §§ 204, 223, 226.7 and 1198); (3.) Failure to Pay Hourly Wages (Cal. Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198); (4.) Failure to Indemnify (Cal. Lab. Code § 2802); (5.) Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a)); (6.) Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 et seq.); (7.) Civil Penalties under the Private Attorney's General Act ("PAGA") (Cal. Lab. Code §§ 2698, et seq.)

True and correct copies of the Summons, Complaint, and Proof(s) of Service are attached to the supporting Declaration of Joshua D. Kienitz ["Kienitz Decl."] as **Exhibit 1**. All other filings, orders and/or papers in the superior court action, to Defendant's knowledge, are attached to Kienitz Decl. as **Exhibit 2**. As of the date of this Notice of Removal, no other parties have been named or served with the Summons and Complaint, to Defendant's knowledge.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

## II. REMOVAL JURISDICTION

This Court has jurisdiction because a federal question exists under Section 301 of the Labor Management Relations Act ("LMRA"), which provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this [Act], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a) (hereinafter, "Section 301").

Section 301 preemption and jurisdiction apply because the Complaint includes claims that can only be brought as contractual claims under a collective bargaining agreement ("CBA"), because of the application of express CBA exemptions in California Labor Code Sections 204, 512(e) and 514. Section 301 also applies because Plaintiff asserts he is entitled to relief which is controlled by the CBA and makes claims the resolution of which require interpretation of the CBA.

If any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy.

## III. REMOVAL PROCEDURE

### A. Venue Is Proper in This District

Plaintiff filed this action in the Superior Court of California, County of San Francisco. Therefore, pursuant to 28 U.S.C. §§ 84(a), 1391, and 1441(a), venue properly lies in the United States District Court for the Northern District of California.

### B. This Removal Is Timely

Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because Defendant filed it within thirty (30) days after the service of the Summons and Complaint filed in the State Court Action. Service occurred on June 10, 2024. Kienitz Decl., Exhibit 1. This Notice of Removal is timely filed within thirty (30) days thereafter. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48, 354 (1999) (holding removal period is triggered by completed service of process).

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

### C. The Parties, the Union, and the Relevant Collective Bargaining Agreements

PG&E is a company engaged in an industry affecting commerce within the meaning of the National Labor Relations Act (the "NLRA"). 29 U.S.C. §§ 152(2), (6), (7), and 185(a). The International Brotherhood of Electrical Workers, Local 1245 ("IBEW" or the "Union") is a labor organization under the NLRA and LMRA. 29 U.S.C. §§ 152(5) and 185(a). PG&E and IBEW, at all relevant times, have been parties to a collective bargaining agreement ("CBA"). A true and correct copy of the CBA in effect during Plaintiff's employment, and applicable to Plaintiff's employment, along with the agreements to extend the CBA through 2025, are attached to the Ledbetter declaration ("Ledbetter Decl.") as **Exhibit 3**. *See also* Defendant's Request for Judicial Notice [RJN] at ¶ 1.

At all relevant times during his employment with PG&E, Plaintiff was a union–represented employee and part of the bargaining unit represented by the Union and, therefore, subject to the CBA. Ledbetter Decl. at ¶¶ 3,4, 5.

## IV. FACTUAL BACKGROUND

### A. Plaintiff's Employment

PG&E employed Plaintiff as a Gas Service Representative from February 2017 to the present Ledbetter Decl. ¶ 4. In this position, he was classified within the IBEW-represented Physical Unit and his employment was governed by the CBA. Ledbetter Decl., ¶ ¶ 4, 5. In 2020, Plaintiff's base wage rate under the CBA was $53.94. *Id*. at ¶ 6. In 2021, Plaintiff's base wage rate under the CBA was $55.56. *Id*. at ¶ 6. In 2022, Plaintiff's base wage rate under the CBA was $ 57.64. *Id*. In 2023, Plaintiff's base wage rate under the CBA was $ 59.80. *Id*. In 2024 Plaintiff's base wage rate under the CBA was $ 62.04. *Id*.

### B. Relevant Collective Bargaining Agreement Provisions

Two successive CBAs were in effect during Plaintiff's employment, the terms of which were (i) January 1, 2016, to December 31, 2021 and (ii) January 1, 2022 to December 31, 2025. Ledbetter Decl., at ¶ ¶ 3, 4. The provisions of the CBAs relevant to this Removal include the following:

#### 1. Wage Rates and Overtime

**TITLE 6. WAGES, Section 6.1** Attached hereto, made a part hereof, and marked Exhibit X, is a schedule of wage rates applicable to employees described in Section 2.1.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

*Id.* at **Exhibit 3**, CBA p. 5 at § 6.1.

> **TITLE 204. WAGES AND CLASSIFICATIONS, Section 204.1 PAYDAY**
>
> (a) Wages shall be paid at biweekly intervals on Fridays for a two weeks' payroll period ending not less than four nor more than ten days prior to the pay date, provided that if the regular pay date falls on a holiday payment shall be made on the preceding workday.

*Id.* at **Exhibit 3**, CBA p. 55 at § 204.1.

> **TITLE 208. OVERTIME, Section 208.1 DEFINITION** Overtime is defined as (a) time worked in excess of 40 hours in a workweek, (b) time worked in excess of eight hours on a workday, (c) time worked on a non-workday, (d) time worked on a holiday as provided for in Title 103, and (e) time worked outside of regular work hours on a workday. Company shall not be required to pay overtime compensation more than once for any single period of time worked. Overtime shall be cumulated each day and shall be compensated to the one-quarter hour.

*Id.* at **Exhibit 3**, CBA pp. 75-76 at § 208.1.

> **TITLE 208. OVERTIME, Section 208.2 RATE AND DOUBLE TIME**
>
> (a) In general, overtime compensation at the rate of one and one-half times the straight rate of pay shall be paid to employees for overtime as defined in Items (a), (b), (c), (d) and (e) of Section 208.1; except that
>
> (b) the time worked in excess of 12 consecutive hours and continuing until the employee is dismissed from such work shall be paid at the rate of two times the employee's straight rate of pay, or
>
> (c) if, following an employee's dismissal from work or on an employee's non-workday or holiday which the employee is scheduled to have off, the employee is called out for work, the employee shall be paid at two times the employee's straight rate of pay for all work performed outside the employee's regular work hours or on a non-workday or holiday which the employee is scheduled to have off. (Amended 1-1-88)
>
> (d) The time worked in excess of eight hours on the employee's second of two scheduled days off counting from the first day of the basic workweek shall be paid at the rate of two times the employee's straight rate of pay provided such employee has performed work on the first scheduled day off. Employees scheduled to have four consecutive days shall be entitled, in addition to the above, to pay at the rate of two times the employee's straight rate of pay for the time worked in excess of eight hours on the fourth scheduled day off, provided that such employee has also performed work on the third scheduled day off. For employees on an alternative work schedule: If an employee performs work on any non-workday, the employee will receive double time after

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

> eight hours worked on the next day, provided that day is also a non-workday. Double-time after eight hours worked will continue until such time as the employee performs no work on a non-workday or a regular workday occurs. See examples in Letter Agreement 04-10. (Amended 7-25-12)
>
> (e) For purposes of this Section, an employee's 'regular hours of work' shall be the same on a non-workday as those regularly scheduled for such employee on a workday.

*Id.* at **Exhibit 3**, CBA p. 76 at § 208.2.

> **EXHIBIT X – WAGES**
> Effective January 1, 2020 through December 31, 2021

| SAP Job Code | Pay Scale Code | Classification | Progression | 1/1/2020 | 1/1/2021 |
|---|---|---|---|---|---|
| 50010373 | 2210 | Gas Service Representative | Start | $ 45.08 | $ 46.43 |
| | | | End 6 Mo | $ 46.09 | $ 47.47 |
| | | | End 1 Yr | $ 47.76 | $ 9.19 |
| | | | End 18 Mo | $ 49.88 | $ 51.38 |
| | | | End 2 Yr | $ 61.89 | $ 53.45 |
| | | | End 30 Mo | $ 53.94 | $ 55.56 |

*Id.* at **Exhibit 3**, Exhibit X 2020-2021, p. 16.

> **EXHIBIT X – WAGES**
> Effective January 1, 2022 through December 31, 2025

| SAP Job Code | Pay Scale Code | Classification | Progression | 1/1/2022 | 1/2/2023 | 1/1/2024 | 1/1/2025 |
|---|---|---|---|---|---|---|---|
| 50010373 | 2210 | Gas Service Representative | Start | $ 48.17 | $ 49.98 | $ 51.85 | $53.79 |
| | | | End 6 Mo | $ 49.25 | $ 51.10 | $ 53.02 | $ 55.01 |
| | | | End 1 Yr | $ 51.03 | $ 52.94 | $ 54.93 | $ 56.99 |
| | | | End 18 Mo | $ 53.31 | $ 55.31 | $ 57.38 | $ 59.53 |
| | | | End 2 Yr | $ 55.45 | $ 57.53 | $ 59.69 | $ 61.93 |
| | | | End 30 Mo | $ 57.64 | $ 59.80 | $ 62.04 | $64.37 |

*Id.* at **Exhibit 4**, Exhibit X at p. 198.

> **2. Meal Periods**
>
> **TITLE 202. HOURS, Section 202.4 HOURS– GENERAL RULE**
> In general, and except as otherwise provided herein, the regular hours of work shall be from 8 a.m. to 12 o'clock noon and from 12:30 p.m. to 4:30 p.m., or from 8 a.m. to 12 o'clock noon and from 1 p.m. to 5 p.m.; provided, however, that the regular lunch period may be advanced or delayed one hour or less for any of the [enumerated] reasons, … (e) when prearranged or emergency overtime work starting after 6:00 a.m. and before 7:00 a.m. results in advancing the lunch period to provide for the meal to be eaten no more than five hours after work began. A change in lunch period for any of the foregoing reasons shall not be deemed to require the payment of overtime except that if

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

> the regular lunch period is advanced or delayed for more than one hour for any of the reasons herein listed (a), (b), and (c), the employees involved shall be paid at the overtime rate for work performed in the regular lunch period and may eat their lunch on Company time. (Amended 1-1-88)

*Id.* at **Exhibit 3**, CBA pp. 48-49 at § 202.4.

**3. Business Expenses**

> **TITLE 201, EXPENSES, Section 201.3 LUNCH EXPENSE.** (a) Other than as provided in Subsection (b), employees who leave from and return to their established headquarters the same day shall not be reimbursed for lunch expense.
>
> (b) If an employee who works in an office or shop is temporarily required to be away from such work locations and is thereby prevented from following his/her usual lunch arrangement Company shall reimburse the employee for lunch expense if the employee had not been given notice of the temporary change prior to the close of the previous workday (Amended 1-1-91).

*Id.* at **Exhibit 3**, CBA pp. 46 at § 201.3.

> **TITLE 201, EXPENSES, Section 201.4 MOVING EXPENSES.** An employee who is required to change his/her residence from one locality to another for Company's convenience shall be reimbursed by Company for any expense the employee incurs thereby in moving his/her household goods, but no reimbursement shall be made by company for expenses incurred by an employee in connection with a transfer which is made at the employee's request or the result of the employee's bid for a job. (Amended 1-1-91).

*Id.* at **Exhibit 3**, CBA pp. 46 at § 201.3.

> **TITLE 201. EXPENSES, Section 201.5 TELEPHONE EXPENSES.** Whenever Company requires an employee to install and maintain a telephone in his/her home the expenses thereof shall be borne by Company (Amended 1-1-91).

*Id.* at **Exhibit 3**, CBA p. 46 at § 201.5.

> **TITLE 201, EXPENSES, Section 201.6 PERSONAL VEHICLE.** An employee who is authorized by Company to use his/her personal vehicle in connection with his/her duties shall be entitled the maximum non-taxable vehicle mileage allowance allowed by the I.R.S., except that an employee covered under Standard Practice 552.3 will receive reimbursement as provided therein. However, the application of the DMA shall not be reduced without agreement with the Union. (Amended 1-1-00).

*Id.* at **Exhibit 3**, CBA p. 46 at § 201.6.

**4. Grievance and Arbitration**

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

> **TITLE 102. GRIEVANCE PROCEDURE, Section 102.1 STATEMENT OF INTENT – NOTICE** … It is the intent of both Company and Union that the processing of disputes through the grievance procedure will give meaning and content to the Collective Bargaining Agreement.
>
> The parties are in agreement with the policy expressed in the body of our nation's labor laws that the mutual resolution of disputes through a collectively bargained grievance procedure is the hallmark of competent industrial self-government. Therefore, apart from those matters that the parties have specifically excluded by way of Section 102.2, all disagreements shall be resolved within the scope of the grievance procedure.

*Id.* at **Exhibit 3**, CBA p. 12 at § 102.1.

> **TITLE 102. GRIEVANCE PROCEDURE, Section 102.2 GRIEVANCE SUBJECTS** Disputes involving the following enumerated subjects shall be determined by the grievance procedures established herein:
>
> (a) Interpretation or application of any of the terms of this Agreement, including exhibits thereto, letters of agreement, and formal interpretations and clarifications executed by Company and Union.
>
> (b) Discharge, demotion, suspension or discipline of an individual employee.
>
> (c) Disputes as to whether a matter is proper subject for the grievance procedure.

*Id.* at **Exhibit 3**, CBA p. 12 at § 102.2.

This is a non-exhaustive list of the CBA provisions that create and/or govern the rights and privileges that Plaintiff has placed at issue in the Complaint.

## V. LEGAL DISCUSSION

Plaintiff pleads seven causes of action, all styled as state law claims involving violations of wage and hour provisions of the California Labor Code, IWC Wage Orders, and Unfair Competition Law ("UCL"). Plaintiff's claims are preempted under Section 301 because they are necessarily contractual claims under the CBA as state law does not apply to the claims by virtue of express exemptions in the Labor Code and/or require the interpretation of the CBA's provisions. The First Cause of Action for meal breaks is preempted because Plaintiff was employed by an electrical and gas corporation and covered by a CBA that satisfies the exemption in Labor Code Section 512(e), and because this Cause of Action includes a preempted claim under Labor Code Section 204. The Second

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

Cause of Action, regarding rest breaks, is preempted because it includes a preempted claim under Labor Code Section 204. The Third Cause of Action for failure to pay overtime and minimum wages is preempted due to the exemption in Labor Code Section 514, because this Cause of Actions includes claims preempted under Labor Code Sections 204 and 223, and because the very same factual allegations underlie both the overtime and minimum wage claims (*i.e.*, the overtime and minimum wage claims are entirely conjoined). Similarly, the Fourth Cause of Action for business expenses is preempted as it requires interpretation of the CBA's provisions governing expense reimbursements. The Seventh Cause of Action under PAGA is preempted because it is derivative of the preempted underlying California Labor Code claims. Plaintiff's Fifth and Sixth Causes of Action for inaccurate wage statements under Labor Code Section 226 and restitution under the UCL are also preempted as they derive from preempted underlying claims. Lastly, the Court retains supplemental jurisdiction over any remaining non-preempted claims. Therefore, and the Court has jurisdiction over all of Plaintiff's causes of action.

**A. The Section 301 Preemption Analysis – Legal Standard**

Section 301 completely preempts all claims that are based on, or require the interpretation of, a collective bargaining agreement. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368–69 (1990); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–11 (1985); *Associated Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers*, 109 F.3d 1353, 1356–57 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements").

Section 301 preemption furthers two important federal policies. First, it ensures that the interpretation of collective bargaining agreements remains uniform and independent of state law. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962) (inconsistent interpretations would "inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements"). Second, the complete preemption doctrine gives effect to the parties' mutual promise to resolve disputes through the grievance-arbitration process and furthers the strong federal policy that labor disputes "remain[] firmly in the arbitral realm." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 411 (1988). This Court has subject matter jurisdiction over—and thus a defendant may properly

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

remove—any ostensible state law claim preempted by Section 301. *Franchise Tax Board v. Construction Laborers*, 463 U.S. 1, 24 (1983); *Allis-Chalmers Corp.*, 471 U.S. at 220 (if preempted, the "claim must either be treated as a § 301 claim ... or dismissed").

The Section 301 preemption analysis has two steps:

Step One. Under the Section 301 preemption analysis, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (internal citations and quotations omitted). Under *Curtis*, where an asserted Labor Code or Wage Order claim is covered by an available CBA exemption – such that there exists no valid underlying state law claim – the Section 301 preemption inquiry is resolved at this first step. This is because, in the case of a state law meal break claim (for example), if Labor Code Section 512(a) does not apply (due to the application of the Labor Code Section 512(e)-(g) CBA exemption), any pleaded meal break claim is necessarily a contractual claim. *See, e.g., Giles v. Canus Corp.*, 2022 WL 3370793, *4-5 (N.D. Cal. Aug. 16, 2022) (applying *Curtis*).

Step Two. If, and only if, there is no preemption found at the first step of the analysis, courts proceed to the second step of the Section 301 preemption analysis, which asks "whether a plaintiff's state law right is substantially dependent on analysis of the CBA." *Curtis*, 913 F.3d at 1153. Under this second step, where there is no applicable CBA exemption, Section 301 preemption still applies if the resolution of a plaintiff's minimum wage claim (for example) requires interpretation of the CBA. *See Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007 (C.D. Cal. Sep. 2, 2022) (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks through Article 27."); *Giles,* 2022 WL 3370793, *6 (holding minimum wage claim preempted because resolving that claim would require an interpretation of terms "actual time worked" and "show-up pay" as used in the CBA).

Notably, whether Plaintiff's operative pleading mentions the CBA is not relevant to the Section 301 preemption analysis. *Curtis*, 913 F.3d at 1152; *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 750 (S.D. Cal. 2021); *Mellon*, 625 F. Supp. 3d at 1013; *Ayon v. Zero Waste Sols., Inc*, 2021 WL 4065716, *3 (E.D. Cal. Sept. 7, 2021).

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

**B. Plaintiff's First Cause Of Action (Meal Breaks) Is Preempted Under *Curtis* Step One.**

Plaintiff's First Cause of Action alleges the failure to provide meal breaks under California law. However, Plaintiff has no valid state law meal break claim because the Labor Code Section 512(e) exemption applies. As is relevant here, the Section 512(e) exemption applies because Plaintiff:

(i) was employed by an electrical and gas corporation (*see* Labor Code Section 512(f)(4)); and

(ii) was covered by a CBA that

(a) expressly provides for a range of wages, hours and working conditions (*see* Sections IV.B.1, IV.B.2, *supra*),

(b) expressly provides for meal periods (*see* Section IV.B.2, *supra*)

(c) provides final and binding arbitration of disputes concerning the CBA's meal period provisions (*see* Section IV.B.4, *supra*),

(d) provides premium wage rates for all overtime hours worked (*see* Section IV.B.1, *supra*); and

(e) provides a regular hourly rate of pay in excess of 30 percent above the California state minimum wage (*see* Section IV.B.1, *supra*).

The meal break CBA exemption in Labor Code Section 512(e) has, like the Labor Code Section 514 exemption, been construed broadly by the courts. In the seminal case *Araquistain v. Pacific Gas & Electric Co.*, 229 Cal. App. 4th 227, 230, 237-38 (2014), the Court of Appeal held that the Section 512(e) exemption was met where the underlying CBA (the very same CBA that applies to Plaintiff here) simply provided that "shift employees and other employees whose workday consists of eight consecutive hours shall be permitted to eat their meals during work hours and shall not be allowed additional time therefore at Company expense" (*i.e.*, even where the CBA did not provide a precise duration or timing for meal periods). Where the Section 512(e) exemption is met, the exempted-from state law provision (in this case, meal periods), "as a whole," does not apply. *Id.* at 236.

Further, where, as here, the Labor Code Section 512(e) exemption applies, a pleaded state law meal period claim is preempted by Section 301. *See Rodriguez v. Gonsalves & Santucci, Inc.*,2022 WL 161892, *4 (N.D. Cal. Jan. 18, 2022) (*citing Curtis*, 913 F.3d at 1155-56); *accord Giles*, 2022

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

WL 3370793, *4-5; *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1098 (N.D. Cal. 2014) ("So if Section 512(e) applies, then 512(a) does *not* apply, and plaintiff's claimed right to meal periods cannot be said to be based on state law.") (emphasis in original).

### C. Plaintiff's Second Cause of Action (Rest Breaks) Is Preempted Under *Curtis* Step One.

Although the court has supplemental jurisdiction over Plaintiff's Second Cause of Action, as explained in Section V.H below, it is important to note that the rest break claim is also preempted because within his Second Cause of Action, Plaintiff alleges that "Pursuant to Labor Code 204, 218.6, and 226.7, Plaintiff on behalf of himself and Rest Period Sub-Class members, seeks to recover unpaid premium wages, interest thereon, and costs of suit." Compl., ¶ 60. Labor Code Section 204 dictates the frequency of wage paydays. However, Section 204 does not apply "when employees are covered by a collective bargaining agreement that provides different pay arrangements." Lab. Code § 204(c). A California state law claim under Labor Code Section 204 is waivable and negotiable as to a union represented employee. *Hall v. Live Nation Worldwide, Inc.* 146 F. Supp. 3d at 1203-4 (holding Labor Code Section 204 claim preempted under Section 301 where CBA contained its own pay timing rules).

Here, Title 204 of the CBA requires *biweekly* wage payments. *See* Section IV.B.1 *supra*. Thus, Plaintiff's Labor Code Section 204 claim is preempted under Section 301. *Hall*, 146 F. Supp. 3d at 1203-04; *Bradford v. Prof'l Tech. Sec. Servs.*, 2020 WL 2747767, *5 (N.D. Cal. May 27, 2020) ("Because the CBA here provides for a different pay arrangement than the statute, [plaintiff's] right to timely payment exists solely as a result for the CBA and is preempted."); *Ariola v. Raytheon CA Techs Corp* 2023 U.S. Dist. LEXIS 158377 *21-*25 (C.D. Cal., September 6, 2023) (finding that a bi-weekly pay arrangement is distinct from the section 204(a) requirement to make semi-monthly payments, and further holding that [Plaintiff's] claim under Section 204 was preempted).

Plaintiff's Second Cause of Action is preempted under *Curtis* Step One because it alleges a violation of and seeks relief under Labor Code Section 204. Labor Code Section 204 does not apply when employees are covered by a collective bargaining agreement (CBA) with differing pay arrangements, as specified in California Labor Code § 204(c). Courts consistently recognize that such state law claims are subject to waiver and negotiation for union-represented employees under Section

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

301 of the LMRA. Moreover, the specific requirement in Title 204 of the CBA for biweekly wage payments serves to reinforce the preemption of Plaintiff's California Labor Code Section 204 claim.

**D. Plaintiff's Third Cause Of Action (Failure To Pay Overtime and Minimum Wages) Is Preempted Under *Curtis* Step One.**

In Plaintiff's Third Cause of Action, Plaintiff asserts that "Defendants failed to pay hourly wages to Plaintiff and Hourly Employee Class members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates." Compl., ¶ 76. However, Plaintiff has no valid state law overtime claim because the Labor Code Section 514 exemption applies. Labor Code Section 514 provides an overtime exemption where "an employee [is] covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

First, the CBA provides for a range of wages, hours, and working conditions. *See* provisions quoted in Sections IV.B.1, IV.B.2, *supra*.

Second, the CBA provides premium wage rates for all overtime hours worked. *See* CBA Title 208.1 and 208.2.

Third, the CBA provides hourly rates of pay well in excess of 30 percent above the then-current California minimum wage. *See* Section IV.B.1, *supra*.

Accordingly, the Labor Code Section 514 overtime exemption, which has been construed and applied broadly by state and federal courts, clearly applies here. S*ee Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109 (2014) (where Section 514's requirements are met, an employer is only required to pay for overtime as defined by the collective bargaining agreement and Section 510 simply does not apply); *Curtis*, 913 F.3d at 1154-55 ("While section 510 establishes a default definition of overtime applicable to non-unionized employees, unionized employees 'have sought and received alternative wage protections through the collective bargaining process'") (*quoting Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000)).

Where, as here, the Section 514 exemption applies to a union-represented plaintiff, the "right

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

to overtime 'exists solely as a result of the CBA,' and therefore is preempted under § 301." *Curtis*, 913 F.3d at 1154; *accord, e.g., Giles*, 2022 WL 3370793, *4; *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, 2022 U.S. Dist. LEXIS 42113, *11 (C.D. Cal. Mar. 8, 2022); *Rodriguez*, 2022 WL 161892, *4 (*citing Curtis*, 913 F.3d at 1153-55); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203-04 (C.D. Cal. 2015) (same).

The minimum wage portion of the Third Cause of Action is preempted because the alleged underlying facts (allegations of off-the-clock work) are precisely the same for Plaintiff's overtime and minimum wage claims. Those underlying factual allegations are in Paragraph 18 of the Complaint, which alleges that 5 to 10 minutes per day of off-the-clock tablet login time at the start of the workday resulted in employees "not being paid for all hours worked[.]" Where, as here, pleaded minimum wage claims are factually conjoined with preempted overtime claims, *both* the overtime and minimum wage claims are preempted. *See Chavez v. Smurfit Kappa N. Am. LLC,* 2018 WL 8642837, *4 (C.D. Cal Oct 17, 2018) (holding that a minimum wage off-the-clock claim, that could only arise out of plaintiff's preempted overtime off-the-clock claim, was also preempted under section 301); *accord, generally, Rodriguez*, 2022 WL 161892, *6 ("because the claim for unpaid minimum wages substantially depends on an analysis of the CBA, the LMRA preempts the claim."); *Giles*, *supra*, 2022 WL 3370793, *6; *Mellon*, *supra,* 625 F. Supp. 3d 1007, 1015.

Within his Third Cause of Action, Plaintiff also alleges that PG&E violated Labor Code Section 204 by failing to timely pay its employees for all hours worked. Compl., ¶ 71. However, Labor Code Section 204 does not apply "when employees are covered by a collective bargaining agreement that provides different pay arrangements." Lab. Code § 204(c). Thus, as is the case with overtime, meal and rest break claims, a California state law claim under Labor Code Section 204 is waivable and negotiable as to a union represented employee. *Hall*, 146 F. Supp. 3d at 1203-4 (holding Labor Code Section 204 claim preempted under Section 301 where CBA contained its own pay timing rules).

Here, Title 204 of the CBA requires *biweekly* wage payments. (*See* Section IV.B.1 *supra*). Thus, Plaintiff's Labor Code Section 204 claim is preempted under Section 301. *Hall*, 146 F. Supp. 3d at 1203-04; *Bradford,* 2020 WL 2747767, *5 ("Because the CBA here provides for a different pay

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

arrangement than the statute, [plaintiff's] right to timely payment exists solely as a result for the CBA and is preempted."); *Ariola,* 2023 U.S. Dist. LEXIS 158377 *21-*25 (C.D. Cal., September 6, 2023) (finding that a bi-weekly pay arrangement is distinct from the section 204(a) requirement to make semi-monthly payments, and further holding that [Plaintiff's] claim under Section 204 was preempted).

Additionally, the Third Cause of Action includes a claim under Labor Code Section 223, alleging it is "unlawful for employers to pay their employees lower wages than required by contract or statute while purporting to pay them legal wages" Compl., ¶ 72. Labor Code Section 223 provides, in relevant part: "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." In the absence of any law that requires PG&E "to maintain a designated wage scale" (no such law is alleged in the Complaint), and in the absence of any other contract for wage rates (individual bargaining over wage rates is not possible for union-represented employee in any event), this Section 223 claim is clearly preempted under *Curtis* Step One because it amounts to a claim that the CBA was breached. *See Navarro v. Servisair, LLC,* 2008 WL 3842984, *4-5 (N.D. Cal. Aug. 14, 2008).

Accordingly, the entire Third Cause of Action is preempted under Section 301 for several intersecting reasons.

Alternatively, if the Court finds that any portion of Plaintiff's Third Cause of Action is not preempted, the Court has supplemental jurisdiction because any non-preempted claims form part of the same case or controversy as the preempted claims. *See Gay v. Pac. Steel Group*, 2021 WL 2917095, *3 (N.D. Cal Jun. 15, 2021) (finding supplemental jurisdiction for minimum wages, unpaid wages, non-compliant wage statements, and other claims when overtime, meal period, and rest period claims were preempted).

### E. Plaintiff's Fourth Cause Of Action (Business Expenses) Is Preempted By *Curtis* Step Two

Plaintiff vaguely alleges PG&E violated Labor Code Section 2802 as follows: "Plaintiff and the putative class members were provided an allowance every year for flame-resistant clothing that

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

Defendants required them to wear to work. Plaintiff and the putative class were required to maintain their own uniform to ensure they had required uniforms available to them. The flame-resistant clothing had to be washed separately from other clothing." Compl. ¶ 31.

Section 301 preemption applies to Plaintiff's Fourth Cause of Action because this "state law right is substantially dependent on analysis of the CBA." *See Curtis*, 913 F.3d at 1153. The case law provides ample guidance for a situation such as this - where a union-represented plaintiff makes broad and vague expense reimbursement allegations, and the applicable CBA contains relevant expense reimbursement provisions. *See, e.g., Rodriguez*, 2022 WL 161892, *4-5 (Section 301 preemption applied to expense reimbursement claims for, among other things, cell phone, mileage, and gas costs, and reasoning: "[T]he failure to pay business expenses … substantially depends on an analysis of the CBA. The plaintiff claims an entitlement to reimbursement for purchasing mandatory work uniforms, safety equipment, laundering uniforms, mileage and gas costs, use of cell phones, and tools. The CBA provides for reimbursable expenses for mileage and gas, and the terms about mileage and routes require analysis and interpretation. Similarly, … it provides for workers to furnish some equipment and the employer to provide housing for certain equipment and safety equipment. It describes employees' entitlement to protective clothing and equipment if they work with caustic substances. Resolution of the claim turns on the analysis of the CBA and interpretation of its terms, and the LMRA thus preempts these claims that are substantially dependent on analysis of the CBA."); *Linebarger v. Graphic Packaging International, LLC*, 2020 WL 1934958, *6 (C.D. Cal. Apr. 22, 2020) (finding Section 301 preemption of cell phone expense reimbursement claim where CBA included language regarding the purchase of tools necessary to complete the work).

In this regard, the CBA contains numerous provisions that provide expense reimbursement: Section 201.5 requires PG&E to reimburse employees for telephone costs; Section 201.6 requires PG&E to reimburse employees for mileage driven; Section 201.3 requires PG&E to reimburse employees for certain meal expenses; and Section 201.4 requires PG&E to reimburse employees for certain moving expenses. *See supra*, Section IV.3. As in *Rodriguez* and *Linebarger*, this claim is preempted by Section 301 because the resolution of Plaintiff's expense reimbursement claims requires interpreting and applying the various CBA provisions regarding expense reimbursement.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

Further, as discussed in Section G below, the Court also has supplemental jurisdiction over the Plaintiff's fourth cause of action because the Plaintiff's expense reimbursement claim forms part of the same controversy as the preempted claims.

**F. Plaintiff's Seventh Cause Of Action (PAGA) Is Preempted Because The Underlying Labor Code Claims Are Preempted**

For PAGA claims, the Section 301 preemption analysis turns on whether the underlying Labor Code claims are preempted. *See Radcliff.,* 519 F. Supp. 3d at 751-752 (denying plaintiff's motion to remand, as a PAGA action based on a preempted labor code claim is preempted under Section 301); *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP,* 2022 WL 707206, *4 (C.D. Cal. Mar. 8, 2022) (denying motion to remand PAGA case because the defendants' CBA with the aggrieved employees satisfy the requirements in section 514, the Plaintiff's meal break claim is completely preempted by section 301 of the LMRA, and the court had federal jurisdiction over the claim); *Chatman v. Wedriveu, Inc.,* 2022 U.S. Dist. LEXIS 199533, *18-19 (N.D. Cal. Oct. 28, 2022) (holding that court had jurisdiction over the PAGA case because plaintiff's PAGA claims are partly derivative of preempted overtime, meal period, and sick leave claims); *Jimenez v. Young Mkt. Co.,* 2021 U.S. Dist. LEXIS 242424 at *19 (N.D. Cal. Dec. 20, 2021) ("[I[f there are multiple claims underlying the sole PAGA claim, the district courts consider the preemption issue for each claim separately"); *Rodriguez v. USF Reddaway Inc.,* 2022 WL 18012518, *5 (E.D. Cal. Dec 30, 2022) (holding that the court has federal question jurisdiction over plaintiff's PAGA claim to the extent it was based on preempted overtime, meal period, and failure to timely pay wages claims); *Sachs v. Pankow Operating, Inc.,* 2022 U.S. Dist. LEXIS 29328 *15 (C.D. Cal Feb. 16 2022) (holding that court had jurisdiction over plaintiff's PAGA claim because it had jurisdiction over two underlying labor code claims); *Blackwell v. Com. Refrigeration Specialists, Inc,.* 2021 U.S. Dist. LEXIS 119212 ,*10-13 (E.D. Cal. June 25, 2021) (finding that Plaintiff's argument that section 301 preemption doesn't apply because he asserted a pure PAGA action was unpersuasive because plaintiff's claim rests upon multiple discreet claims and the court typically applies the Section 301 analysis to each discreet claim); *Franco v. E-3 Sys.,* 2019 U.S. Dist. LEXIS 195396, *11 (N.D. Cal Nov. 8, 2019) ("PAGA claims are derivative of the predicate California Labor Code Violations, and therefore rise and fall with those underlying claims.").

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

As explained in detail above, because at least some of the underlying California Labor Code claims are preempted by Section 301, Plaintiff's entire PAGA action is preempted.

**G. Plaintiff's Derivative Wage Statement, and UCL Claims (Fifth And Sixth Causes of Action Are Preempted Under *Curtis* Step One.**

Plaintiff's Fifth Cause of Action (wage statement) and Sixth Cause of Action (restitution under the UCL) are all, in whole or in part, derivative of Plaintiff's claims that are preempted under Section 301 for the reasons described above. Compl., ¶¶ 102, 110 [all derivative claims are based on prior allegations in the Complaint].

Both of these derivative claims are preempted under Section 301 for this reason. *Giles*, 2022 WL 3370793, *6-7; *Rodriguez*, 2022 WL 161892, *6; *Mellon*, 625 F. Supp. 3d 1007, 1014 ; *Jimenez v. Young's Mkt. Co*., 2021 WL 5999082, *13 (N.D. Cal. Dec. 20, 2021); *Vasquez v. Packaging Corp. of Am*., 2019 WL 4543106, *4 (C.D. Cal. Jun. 7, 2019).

**H. The Court Has Supplemental Jurisdiction Over Plaintiff's Remaining Claims**

If this Court finds that any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy. *See Giles*, 2022 WL 3370793, *6 (court exercised supplemental jurisdiction over *non*-preempted rest break claim by non-construction industry plaintiff, where overtime, meal break and minimum wage claims were preempted by Section 301); *Jimenez*, 2021 WL 5999082 at *21 (exercising supplement jurisdiction because the plaintiffs' remaining claims of minimum wage, rest period, and unpaid wages "arose from the same working conditions and relationship" with the defendants during the same period as the plaintiffs' overtime and meal period claims).

///

///

///

///

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

## VI. CONCLUSION

For the reasons provided herein, Defendant hereby removes this action from the California Superior Court, in and for the County of San Francisco, to the United States District Court, Northern District of California. Defendant requests that this Court retain jurisdiction for all further proceedings.

Dated: July 10, 2024

LITTLER MENDELSON, P.C.

*/s/ Harman Deol*
JOSHUA D. KIENITZ
DOUGLAS L. ROPEL
HARMAN S. DEOL
Attorneys for Defendant
PACIFIC GAS & ELECTRIC COMPANY

4854-2513-3263.1 / 101443-1155

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468